UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cr-24-MOC-DSC-1

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| ANTWAN RAY HAWKINS, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 27). The Government has responded in opposition to the motion.

I. BACKGROUND

Defendant was originally sentenced in the Eastern District of North Carolina on December 1, 2014, to a term of fifty-one months to be followed by three years of supervised release for possession of a stolen firearm, in violation of 18 U.S.C. § 922(j) and 924(a)(2). (Doc. No. 15 at 1). On January 4, 2018, Defendant's supervision was transferred to this district. (Id.). On November 26, 2018, his supervised release was revoked for the first time, and he was sentenced to three months of imprisonment, to be followed by twelve months of further supervised release. (Id.). Defendant's most recent term of supervised release began on January 22, 2019. (Id.). On July 26, 2019, that term of supervised release was modified, and he was ordered to complete sixty days of home detention with location monitoring.

On December 10, 2019, United States Probation filed a Petition for Warrant for Offender

1

Under Supervision, alleging four violations: (1) new law violation for possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g), on December 10, 2019; (2) new law violation for possession of two glass jars containing marijuana, in violation of 21 U.S.C. § 844(a), on December 10, 2019; (3) drug/alcohol use as a result of testing positive for marijuana on December 6, 2019; and (4) leaving the judicial district without permission on November 12, 2019, and July 8, 2019, to travel to Rocky Mount, North Carolina, without the United States Probation Office's permission. (Doc. No. 15 at 2).

Probation reported that Defendant's adjustment to supervision was poor and included a positive test for marijuana in April 2019, approximately three months after his supervision began. Defendant was referred for substance abuse assessment and was placed on the "code-a-phone" program for random drug screening. (Id. at 4). Defendant's supervision was modified in July 2019 to add the sixty days of home detention with location monitoring as a result of Defendant's leaving the district without permission. (Id.). The firearm and marijuana giving rise to the first and second violations were found as the result of a search of Defendant's residence by probation on December 10, 2019. (Id.).

Defendant was arrested on December 10, 2019, (Doc. No. 16), and ordered detained following a detention hearing on December 17, 2019, (Doc. No. 21). Defendant's final supervised release revocation hearing was held on May 20, 2020, approximately two months into the global pandemic. Defendant admitted to Violation 3, drug/alcohol use, and the United States dismissed the remaining violations. This Court sentenced Defendant to a year and a day in custody, to be followed by twelve months of additional supervised release. (Doc. No. 26).

Defendant is currently in the custody of the Mecklenburg County Jail and is scheduled to

2

be released on October 16, 2020.[1]  In August 2020, Defendant filed the motion currently before this Court requesting "compassionate release" under 18 U.S.C. § 3582(c)(1)(A).

## II. DISCUSSION

The Court denies Defendant's request for a sentence reduction because he has not demonstrated "extraordinary and compelling reasons" warranting release.  The relevant part of the compassionate release statute permits this Court "after considering the factors set forth in section 3553(a) to the extent that they are applicable" to reduce Defendant's sentence only if finds that (1) "extraordinary and compelling reasons warrant such a reduction"; "and" (2) "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).  The applicable "policy statement" appears in section 1B1.13 of the Sentencing Guidelines Manual.  That section and its commentary describe the "circumstances" under which "extraordinary and compelling reasons exist."  U.S.S.G. § 1B1.13 & cmt. (n.1).  First, the defendant must not be "a danger to the safety of any other person or to the community."  Id.  Second, one of four specific circumstances must exist involving, for example, the medical condition of the defendant, his age, his family circumstances, or reasons "determined by the Director of the Bureau of Prisons."  U.S.S.G. § 1B1.13, cmt. (n.1).  One of these circumstances requires that the defendant suffer from "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13, cmt. (n.1(A)(ii)(I)).

---

[1] The Government contends that Defendant has not established that he has exhausted his administrative remedies.  The Government asserts, however, that it is not moving for dismissal based on failure to exhaust administrative remedies since Defendant is in the Mecklenburg County Jail and has not yet been transferred to a Bureau of Prison facility.

3

As noted, Defendant is currently incarcerated in the Mecklenburg County Jail. The jail has taken numerous precautions to address the global pandemic, and it currently has only one inmate positive for COVID-19, who is housed in the infirmary. In total, Mecklenburg County Jail has had 76 inmates test positive during the pandemic, none of whom have required hospitalization. Defendant tested positive for COVID-19 in July while in the jail, and he recovered without requiring hospitalization. He is currently in general population, as jail administrators have determined that he has no health concerns requiring special housing or consideration. Defendant argues he should be granted compassionate release because "[t]he COVID 19 threat to [him]self is both specific and immediate" because there was "community spread has come to the jail" and because he has "been living among and has been exposed to, residents who has [sic] tested positive" and he was then "positive." (Doc. No. 27 at 2). Defendant also asserts, without support, that his "medical history includes asthma and hypertension." (Id.).

To the extent Defendant's arguments are based on a generalized risk of contracting COVID-19, this is not an extraordinary and compelling reason warranting early release. As the Third Circuit reasoned in United States v. Raia, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." 954 F.3d 594, 597 (3d Cir. 2020). If it did, every inmate would have a justification for compassionate release. That is, "speculation as to whether COVID-19 will spread through Defendant's detention facility…, whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release." United States v. Shah, Case No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) (denying compassionate release where defendant claimed diabetes

4

and hypertension, but facility had no cases); see e.g., United States v. Fry, No. 11-141(4), 2020 WL 1923218 (D. Minn. Apr. 21, 2020) ("to merit such compassionate release, Fry must show more than a mere speculation of the possibility of contracting the virus" as "unsubstantiated fears regarding COVID-19 are simply insufficient to warrant" compassionate release). This remains true, notwithstanding the fact that Mecklenburg County Jail previously had an outbreak. Accord United States v. Platt, No. 18cr195, 2020 WL 3839847, at *3 (D. Colo. July 8, 2020); United States v. Pichardo, 17-cr-512, 2020 WL 3819602, at *2 (S.D.N.Y. July 8, 2020).

As to his alleged medical conditions, Defendant indicates he has a history of "asthma and hypertension." (Doc. No. 27 at 2). Defendant offers no support for the assertion he has these medical conditions. To the contrary, the Offender Characteristics in Defendant's supervised release petition note that he has "no known health problems." (Doc. No. 15 at 4).[2] Further, if Defendant had a "medical history of asthma and hypertension," such conditions would have existed in May 2020, at the time he was sentenced, two months into the global pandemic. Thus, to the extent this was a true concern that would have been the time for Defendant to raise and the Court to address any potential medical issue. Finally, even if Defendant's assertions with regard to his medical history are taken as true, under current CDC guidelines, asthma (moderate to severe) and hypertension are not listed as conditions that "might" place someone at an increased risk from severe illness. Thus, Defendant has not established that he has a medical condition that would constitute an extraordinary and compelling reason to justify compassionate release.

Additionally, Defendant offers no plan for his release. As a result, it is impossible to

---

[2] The Government notes that, absent a court order or consent from Defendant, the Government is not able to obtain medical records from the Mecklenburg County Jail.

assess whether Defendant would be at a greater risk of contracting or spreading COVID-19 if he were to be released from custody early. And, to the extent Defendant seeks to remain in Mecklenburg County upon his release, he seeks to be released from a facility that seems to have gotten the virus under control, with only one active case, to a county that has thousands of confirmed COVID-19 cases and hundreds of deaths as of September 2020. In sum, Defendant is arguing that he should be granted compassionate release because there <u>might</u> be an additional COVID-19 outbreak at the facility where he is located in the future, and, if there were to be a further outbreak, he would be at high risk because he has an unsubstantiated "medical history [that] includes asthma and hypertension." These are not "extraordinary and compelling" reasons justifying compassionate release.

Second, Defendant has failed to show that his circumstances are extraordinary and compelling in light of the factors set forth in 18 U.S.C. § 3353(a). His supervised release has been revoked twice and modified once. His probation officer reports that his last adjustment to supervision was poor. Moreover, his Criminal History Category is VI, including two points because his underlying crime was committed while he was under a criminal justice sentence. (Doc. No. 15-1 at 5). His prior convictions show a history of violence and disrespect for the law, including assault inflicting serious injury, resisting a public officer, larceny, assault and battery, and sexual battery. (<u>Id.</u> at 2-5). That history, coupled with his poor adjustment to supervision and the fact his supervised release has twice been revoked, confirm that granting compassionate release would result in a sentence that would be inconsistent with the factors set forth in 18 U.S.C. § 3553(a), including resulting in a sentence that fails to promote respect for the law. Finally, Defendant has not demonstrated that he would not be a danger to the safety of another person or to the community if he were to be released early.

6

Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 27), is **DENIED**.

Signed: October 13, 2020

Max O. Cogburn Jr.
United States District Judge